# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

---

| | | |
|---|---|---|
| LEVESTER GRAYER, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Civil No. 2:22-cv-02769-TLP |
| | ) | Criminal No. 2:17-cr-20014-TLP-1 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

---

## ORDER ON MOTION UNDER 28 U.S.C. § 2255

---

A jury rendered a guilty verdict as to Defendant Levester Grayer for possession of cocaine base and for being a felon in possession of a firearm. (Verdict and Order on Guilty Verdict, *United States v. Grayer*, 2:17-cr-20014-TLP, ECF Nos. 162, 168.) The Court sentenced Defendant to 235 months of incarceration under the Armed Career Criminal Act, Section 924(e)(1). (*Id*. at ECF No. 249.) Defendant now seeks to vacate his sentence under 28 U.S.C. § 2255. (*Id.* at ECF Nos. 1, 6, 7, 10, 18, 22, 24–27, 32.) Movant asserts many claims, including that recent Supreme Court decisions render his conviction and sentence unconstitutional. (*Id.*) For the reasons below, the Court denies Movant's Motion.

## <u>BACKGROUND</u>

This case began in October 2016 when the Memphis Police Department (MPD) arrested Movant at the Corner Grocery Store in Memphis, Tennessee. (PSR, *United States v. Grayer*, 2:17-cr-20014-TLP, ECF No. 177 at PageID 736–37.) At the time of his arrest, officers found in his vehicle a small amount of marijuana, cocaine base, and a firearm. (*Id.*) The federal grand

jury returned a three-count indictment charging possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm.  (Indictment, *United States v. Grayer*, 2:17-cr-20014-TLP, ECF No. 1.) Movant chose to go to trial, and the jury acquitted him of possession with intent to distribute crack cocaine and the 924(c) count.  (*Id.* at ECF No. 162.)  But the jury found him guilty of the lesser offense of simple possession of crack cocaine and of being a felon in possession of a firearm.  (*Id.*)  Because Movant's criminal history included at least five convictions for crimes of violence or drug trafficking crimes, the Court found that he qualified as an armed career criminal.  And the Court sentenced him to 235 months imprisonment.  (*Id.* at ECF No. 249.)

In his Motion Under 28 U.S.C. § 2255, Movant brings five claims: 1) that he did not receive clear notice of the penalty as an armed career criminal; 2) that the *Bruen* decision rendered 18 U.S.C. § 922(g)(1) unconstitutional, both facially and as applied to him; 3) that the fact that the jury did not decide whether he committed three violent felonies or drug trafficking felonies on "occasions different" rendered his conviction and sentence unconstitutional citing *Wooden* and *Erlinger*; 4) that Count 3 of the Indictment had a fatal flaw in that it did not assert that he possessed a firearm with knowledge of his status as a felon[1]; and (5) that his lawyer rendered ineffective assistance for failing to assert these claims in the district court.  (*Id.* at ECF Nos. 1, 6, 7, 10, 18, 22, 24–27, 32.)  The Government counters that each of Movant's arguments lacks merit and should therefore be denied.  (*Id.* at ECF No. 13.)  The Court agrees with the Government and will explain its reasoning below.

---

[1] The basis for this claim is the holding in *Rehaif v. United States*, 588 U.S. 225, 139 S. Ct. 2191, 204 L. Ed. 2d 594 (2019).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

And "[a] prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).

The standards from *Strickland v. Washington*, 466 U.S. 668, 687 (1984), control a claim that ineffective assistance of counsel deprived a defendant of his Sixth Amendment right to counsel. To succeed on this claim, a movant must show (1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense." *Id*. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering such a claim must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* at 689. Plus, it is the challenger's burden to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[2] *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. And "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Instead, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *see also Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) (*Strickland* "places the burden on the defendant . . . to show a reasonable probability that the result would have been different.").

The Sixth Amendment right to the effective assistance of counsel extends to the plea-bargaining process and is governed by the two-prong *Strickland* test. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citing *Missouri v. Frye*, 566 U.S. 133, 140–41 (2012)); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). To establish constitutionally ineffective assistance in the plea-bargaining process, the movant must show not only that counsel was deficient, but that the outcome of the plea process would have been different with competent advice. *Id.*

Using these standards, the Court will now address the merits of Movant's § 2255 motion. As explained below, the Government correctly argues that Movant's claims fail.

## I.    Fair Notice

Movant asserts that his Indictment was flawed because it did not provide fair notice of the penalty for an offender who, like him, qualified as an armed career criminal. (ECF Nos. 1, 6, 7, 10, 18, 22, 24–27, 32.) The Government correctly points out that the procedural default

---

[2] If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel performed deficiently. *Strickland*, 466 U.S. at 697.

doctrine bars Movant from bringing this claim and that this claim lacks merit. (ECF No. 13.) First, as to the merits, the Indictment here provided a separate page noting the possible penalties. For Count 3, it said "nmt (not more than) 10 yrs. Imprisonment; . . . , but if the defendant has three prior convictions for violent felonies or serious drug offenses, then nlt (not less than) 15 yrs. Imprisonment, and nmt than life imprisonment, see 18 U.S.C. § 924(e)." (Indictment, Notice of Penalties, *United States v. Grayer*, 2:17-cr-20014-TLP, ECF No. 2-1 at PageID 5.) So the Indictment itself provided Movant with notice of the potential penalty.

What is more, the Indictment here provides more notice than the law requires. The Sixth Circuit noted that the Government need not provide notice about the possibility of an Armed Career Criminal Act (ACCA) enhancement when Movant is indicted, arraigned, or at trial. *United States v. Miller*, 371 F. App'x 646, 649–50 (6th Cir. 2010). Due process requires only that a defendant have access to a record of his prior convictions and an opportunity to challenge them before being sentenced. *Id.* at 650; citing *United States v. Mauldin*, 109 F.3d at 1159, 1162–63 (6th Cir. 1997). Even if Movant lacked knowledge of his criminal history beforehand—which the Court doubts—he received actual notice that the ACCA applied to him when the probation office filed his Presentence Investigation Report (PSR) on September 13, 2019. (PSR, *United States v. Grayer*, 2:17-cr-20014-TLP, ECF No. 177.) Because the Court held his sentencing hearing in July 2020, Movant had enough notice to satisfy due process. In fact, in *Miller*, the Court upheld the conviction when the defendant had three months' notice. 371 F. App'x at 649–50. The *Miller* court held that three months' notice did not violate the due process clause. *Id.*

Movant cites *United States v. Lockhart*, 947 F.3d 187, 192 (4th Cir. 2020), but this case is unpersuasive here. The key difference between *Lockhart* and Movant's case is that the

defendant in *Lockhart* pleaded guilty.  He then argued that, had he known that the ACCA applied

in his case, he would not have entered a plea of guilty.  *Id*. at 192.  But Movant here chose to go

to trial.  That choice makes all the difference to his claim.  The Court is not persuaded that the

*Lockhart* opinion supports his claim.

Another reason Movant's fair notice claim fails here is the procedural default doctrine.

That doctrine says that a movant may not assert a claim on collateral review if they failed to

assert it at trial or on direct appeal, unless they show cause and prejudice.  *Massaro v. United*

*States*, 538 U.S. 500, 204 (2003).  In other words, a motion under 2255 does not replace a direct

appeal.  *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).  As well as showing cause and

prejudice, a movant may bring a procedurally defaulted claim by arguing that he is actually

innocent.  *Bousley v. United States*, 523 U.S. 614, 621 (1998).  But the barrier for a Movant

trying to excuse a procedural default is "intentionally high . . . for respect for the finality of

judgments demands that collateral attack generally not be allowed to do service for an appeal."

*Peveler v. United States*, 269 F.3d 693, 700 (6th Cir. 2001).

Movant here never argued that he lacked notice of his sentencing exposure under Section

924(e) before the trial court or on appeal.  He also fails to show an exception to the procedural

default doctrine.  To argue that he is actually innocent, he would have to show that "in light of all

the evidence, it is more likely than not that no reasonable juror would have convicted him."

*Bousley*, 523 U.S. 623.  Importantly, "actual innocence means factual innocence not mere legal

insufficiency."  *Id.* at 623.  This is a demanding standard and Movant fails to meet it.

Movant's claims that he did not have adequate notice does not equal actual innocence.  In

fact, Movant testified in the trial and explained to the jury that he knew he was a felon the day

the officers found the gun in his car.  The trial transcript reads:

Q.      Mr. Grayer, you are a convicted felon, right?

A.      Yes, sir.

Q.      And you knew you had been convicted of a felony as of October 3, 2016 (the day

of his arrest)?

A.      Yes, sir.

(Transcript, *United States v. Grayer*, 2:17-cr-20014-TLP, ECF No. 198 at PageID 832.)  He was

not claiming actual innocence then or now.  So his claim that he lacked fair notice is barred by

the procedural default doctrine.

**II.    *Bruen* and *Williams* Claim**

Movant claims that 18 U.S.C. §§ 922(g)(1) is facially unconstitutional citing the *Bruen*

decision.  (ECF Nos. 1, 6, 7, 10, 18, 22, 24–27, 32.)  In its *Bruen* decision, the Surpreme Court

announced a new approach for addressing the constitutionality of gun possession restrictions.

*New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387

(2022).  But *Bruen* did not speak to the constitutionality of 18 U.S.C. § 922(g)(1).  As the

Supreme Court recently noted, a facial challenge "is the 'most difficult challenge to mount

successfully,' because it requires a defendant to 'establish that no set of circumstances exists

under which the Act would be valid.'  That means that to prevail, the Government need only

demonstrate that Section 922(g)(8) is constitutional in some of its applications."  *United States v.*

*Rahimi*, 602 U.S. 680, 144 S. Ct. 1889, 1898, 219 L.Ed.2d 351 (2024) (citing *United States v.*

*Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).  To address Movant's claim,

the Court starts with the Second Amendment.

The Second Amendment reads: "A well-regulated Militia, being necessary to the security

of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S.

Const. amend. II.  The Supreme Court has held that the Second Amendment protects an

individual's right to keep and bear arms for self-defense inside one's home.  *District of Columbia*

*v. Heller*, 554 U.S. 570, 592 (2008).  But in *Heller*, the Court noted,

> [a]lthough we do not undertake an exhaustive historical analysis today of the full
> scope of the Second Amendment, *nothing in our opinion should be taken to cast
> doubt on longstanding prohibitions on the possession of firearms by felons* and the
> mentally ill, or laws forbidding the carrying of firearms in sensitive places such as
> schools and government buildings, or laws imposing conditions and qualifications
> on the commercial sale of arms.

554 U.S. at 626–27 (emphasis added).

Two years later, the Supreme Court "in *McDonald* found that this right is fundamental

and applies to the states under the Due Process Clause of the Fourteenth Amendment."  *United*

*States v. Jackson*, 622 F. Supp. 3d 1063, 1065 (W.D. Okla. 2022) (citing *McDonald v. City of*

*Chicago*, 561 U.S. 742, 778 (2010)).  Then the Supreme Court in *Bruen* stated a new way of

analyzing the constitutionality of a firearm regulation by looking at the text, history, and

tradition.  "When the Second Amendment's plain text covers an individual's conduct, the

Constitution presumptively protects that conduct.  The government must then justify its

regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm

regulation."  142 S. Ct. at 2126–27, 2129–30.  Using this new standard, the *Bruen* Court held

that the Second and Fourteenth Amendments protects "the right of an ordinary, law-abiding

citizen" to keep and bear arms for self-defense, inside and outside of one's home.  *Id.* at 2126.

After *Bruen*, courts analyzing constitutional challenges to § 922(g)(1): (1) ask whether

the Second Amendment's plain text covers a defendant's alleged possession of firearms despite

his status as a felon; and, if so (2) evaluate whether § 922(g)(1) aligns with this Nation's

historical tradition of firearm regulation.  *See id.* at 2134–35; *see also Jackson*, 622 F. Supp. 3d

at 1066.  The Sixth Circuit recently used the *Bruen* approach to analyze the constitutionality of

8

Section 922(g)(1), both facially and as applied.  *United States v. Williams*, 113 F.4th 637 (6th

Cir. 2024).  Applying the new method, the Sixth Circuit held that "§ 922(g)(1) is constitutional

on its face and as applied to dangerous people."  *Id.* at 662–63.

### A.     Text – the people

The *Williams* court first looked at the text of the Second Amendment for guidance.  The

court noted that it applied to "the people" without a distinction between felons and non-felons.

*Id.* at 649.  The *Williams* Court then concluded that the Second Amendment applies to felons as

well as other citizens.  *Id*.  So the text alone fails to justify a regulation like Section 922(g)(1).

That said, the Court then conducted a historical analysis and found that, both in England and in

Early America, the government regularly disarmed persons it considered dangerous.  *Id.* at 657.

### B.     History

The *Williams* court described the question for historical consideration as "whether the

challenged regulation is consistent with the principals that underpin our regulatory tradition."

*Id.* at 648 (citing *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024)).  But to qualify as

consistent, the modern regulation need only be "relevantly similar" to laws that our tradition has

historically embraced.  *Id.* (citing *Bruen*, 597 U.S. at 29, 142 S. Ct. 2111).  In other words, the

Court need not find a historical "twin" or "dead ringer."  *Id*.

To begin, the *Williams* court looked at our historical tradition dating to the time before

the founding of the United States.  *Id.* at 650 (citing *Heller*, 554 U.S. at 592; *Bruen*, 597 U.S. at

20).  The *Williams* court found many examples of kings and parliaments disarming persons they

considered dangerous to keep the peace.  *Id*. at 650–52.  The bottom line is those who threatened

the public or the general peace were considered dangerous, and the government would disarm

them.  *Id.* at 651.  In Britain, as religious groups engaged in violence, because the king was

9

Protestant, the government labeled Catholics as dangerous and allowed only Protestants to go armed. *Id.*

But one important feature historically is the right for the individual to prove that they did not pose a danger. *Id.* at 652. The *Williams* court gave more examples of government authority disarming dangerous people before and after the founding of the United States. *Id*. at 652–57. Concluding the historical analysis, the *Williams* court stated "the key point is that entire groups could be presumptively disarmed. That principal holds true today—except today, of course, a group must not be singled out for disarmament on the basis of race or religions in violation of the Fourteenth Amendment." *Id.* at 656–57. The *Williams* Court then considered how § 922(g)(1) compares to the historical backdrop. *Id*. at 657.

As here, the first challenge to § 922(g)(1) in *Williams* is a facial challenge. To bring a facial challenge, a defendant must show "that there exists no set of circumstances under which the act would be valid." *Id*. at 657 (citing *United States v. Solerno*, 481 U.S. 739, 745(1987)). *Williams* held that, because the relevant history shows that the government has regularly disarmed dangerous people, and because most felons are dangerous, § 922(g)(1) aligns with historical gun regulation. *Id.* at 657–663. And so the facial challenge in *Williams* fails. *Id*. Because the *Williams* opinion finds that § 922(g)(1) is constitutional on its face, this Court is bound to follow that holding. So Movant's facial challenge here fails.

The next question for the *Williams* court was whether § 922(g)(1) is constitutional as applied to the defendant. For persons with felony convictions, they face a presumption that they are dangerous. *Id*. at 657. So their "as applied" challenge boils down to whether they can show that they are not dangerous. *Id*. The *Williams* court discussed how felonies are divided into classes. One class is "crimes against the person," such as murder, robbery, rape, and assault. *Id*.

at 658.  As the court noted "it is hard to see why someone who commits such a dangerous and violent act may overcome the presumption that they are dangerous.  One reason for this is that such offenses were historically punished by death."  *Id*.  In the end, the *Williams* court concluded about crimes against the person that "there is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question."  *Id*.

The next category of crimes could still pose "a significant threat of danger."  *Id*. at 659.  This category includes crimes such as drug trafficking because the nature of that conduct often leads to violence.  *Id*.  Other examples of this category include burglary because the owner of the property may encounter the burglar and put lives at risk.  *Id*.  For that reason, "most of these crimes put someone's safety at risk, and thus, justify a finding of danger."  *Id*.[3]

The *Williams* court explained what this Court can consider when deciding an "as applied" challenge to § 922(g)(1).  In sum, the Court "may consider a defendant's entire criminal record—not just the specific felony underlying his 922(g)(1) conviction."  *Id*. at 659–60.  In fact, "[c]ourts may consider any evidence of past convictions in the record, as well as other judicially noticeable information—such as prior convictions—when assessing a defendant's dangerousness."  *Id*.  The *Williams* court also points out that it is not suggesting that the court engage in a categorical approach in determining dangerousness.

Instead, the district court should make "an informed judgment about how criminals commonly operate."  *Id.* at 660 (citing C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 729 (2009)).  Determining dangerousness "will be fact-specific, depending on the unique circumstances of the individual defendant.  And in many

---

[3] The last category of crimes in *Williams* are those like fraud where the threat of physical harm to another person is not obvious.  *Id*.  In such cases, "we trust district courts will have no trouble concluding that many of these crimes don't make a person dangerous."  *Id*.

instances—prior murders, rapes, or assaults—the dangerousness will be self-evident. District courts are well versed in addressing challenges like these. We are therefore confident that the dangerousness inquiry is workable for resolving as-applied challenges to § 922(g)(1)." *Id.* at 660.

The *Williams* court held that Mr. Williams' "as-applied challenge fails. History shows that governments may use class-based legislation to disarm people it believes are dangerous, so long as members of that class have an opportunity to show they aren't. Through § 922(g)(1), Congress has decided to enact a class-wide disarmament of felons. As discussed above, that statute is constitutional as it applies to dangerous individuals." *Id.* at 661–62. Because the defendant was earlier convicted of aggravated robbery, his record showed that he was, in fact, dangerous. *Id*.

The *Williams* court concluded:

> To summarize, we hold today that § 922(g)(1) is constitutional on its face and as applied to dangerous people. Our nation's historical tradition confirms *Heller's* assumption that felon-in-possession laws are 'presumptively lawful.' The history reveals that legislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous—so long as each member of that disarmed group has an opportunity to make an individualized showing that he himself is not actually dangerous.
>
> A person convicted of a crime is 'dangerous,' and can thus be disarmed, if he has committed (1) a crime 'against the body of another human being,' including (but not limited to) murder, rape, assault, and robbery, or (2) a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary. An individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous. . . . In any event, district courts need not find a 'categorical' match to a specific common-law crime to show that a person is dangerous. Rather, district courts should make fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of his specific conviction. Finally, when considering an individual's dangerousness, courts may evaluate a Defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) prosecution.

*Id.* at 663. For the reasons noted above, Movant's facial challenge fails. The Court will

now consider his as-applied challenge.

C.    **Grayer's As-Applied Challenge to § 922(g)(1)**

For the reasons below, the Court finds that Movant's extensive criminal history including many violent and serious drug offenses shows that he is dangerous and, for that reason, his as-applied challenge fails.  For starters, the Court will consider what category Grayer's convictions for violent crimes fall into.  In *Williams*, the court first noted that for persons, like Grayer, with felony convictions, they face a presumption that they are dangerous.  113 F.4th at 657.  Because dangerous people were deprived of their guns historically, their "as applied" challenge focuses on whether they can show that they are not dangerous.  *Id*.

The *Williams* court divided felonies into classes.  The first class is "crimes against the person," such as murder, robbery, rape, and assault.  *Id*. at 658.  As the *Williams* court noted "it is hard to see why someone who commits such a dangerous and violent act may overcome the presumption that they are dangerous.  One reason for this is that such offenses were historically punished by death."  *Id*.  In the end, the *Williams* court concluded about crimes against the person that "there is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question."  *Id*.

Looking at Movant's criminal history, there is much to choose from.  For example in December 1998, Movant committed three series of violent felonies.  First on December 4, 1998, Movant committed three aggravated robberies of individuals while armed with a gun.  (PSR, *United States v. Grayer*, 2:17-cr-20014-TLP, ECF No. 177 at PageID 742.)  About two weeks later, Movant committed multiple assaults, two aggravated robberies and a kidnapping.  (*Id*. at PageID 743–44.)  Finally on December 23, 1998, he and two others, armed with guns, robbed an employee of a pawn shop in Memphis, Tennessee, by pointing guns at her head and forcing

her to open the safe. (*Id.* at PageID 741–42.) Each of these crimes was charged in a separate

indictment. And the state court sentenced Movant for all these December 1998 crimes on the

same date. (*Id.* at ECF No. 177 at PageID 741–43.) When he was released from prison for

these violent felonies, Movant committed two more drug trafficking felonies.

In March 2008, Movant was convicted of four counts of selling cocaine and sentenced to

serve five years in prison. (*Id*. at PageID 746.) After serving that sentence, in 2011, Movant

was charged and convicted of selling cocaine in October 2010. The trial court sentenced

Movant to four years in custody. (*Id*. at PageID 747.) The Court finds that Movant's

convictions for aggravated assault, aggravated robbery, kidnapping and for drug trafficking

show that Movant is indeed dangerous. And so, as applied to Movant, 18 U.S.C. § 922(g)(1) is

constitutional. As a result, his as applied challenge fails.

## III.    *Rehaif* Claim

Movant next argues that the Indictment here failed to state a triable offense because it did

not list all the elements required under *Rehaif*.[4] (*Id.* at ECF No. 1 at PageID 11, 14–15.) He

claims that the Indictment failed to allege that he knew he was a felon when he possessed the

firearm. (*Id.*)

### A.    Grayer Claims the Indictment Was Insufficient

As with his argument before this Court and on direct appeal, Movant argues that the

Indictment was defective without the knowledge element.[5] The Government counters that

---

[4] Movant couched his claim as "incomplete indictment handed down by the grand jury." But he
argues that the indictment failed to included that he acted "knowingly" to include that he knew
his status as a felon. He claims this is a downfall and justifies vacating his conviction and
sentence. (ECF No. 1 at PageID 11, 14–15.)

[5] Movant argued this same claim on his direct appeal and the Sixth Circuit affirmed his
conviction, finding that Movant failed to show that his substantial rights were violated. *United
States v. Grayer*, 2012 WL 3813198 (6th Cir. 2021.)

Movant "cannot show 'a reasonable probability that, but for the error, the outcome of the
proceeding would have been different.'"  (ECF No. 13 at PageID 151–154; *See also*, Response to
Motion to Vacate or for New Trial, *United States v. Grayer*, 2:17-cr-20014-TLP, ECF No. 200 at
PageID 888 (citing *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (internal
citation omitted)).)  The Government's point is well-taken.

Movant is correct that an indictment is defective when it fails to list all the required
elements.  *See United States v. Robinson*, No. 2:17-cr-20046-SHM (W.D. Tenn. Nov. 13, 2019)
(citing *United States v. Reed*, No. 17-12699, 2019 WL 5538742, at *3 (11th Cir. Oct. 28, 2019)
(stating that it was error under *Rehaif* for the indictment to omit the element that the defendant
knew of his felon status); *United States v. Hessiani*, No. 18-10176, 2019 WL 4751462, at *2 (9th
Cir. Sept. 30, 2019) (unpublished) (same); *United States v. Phyfier*, No. 2:17CR482-MHT, 2019
WL 3546721, at *1 (M.D. Ala. Aug. 5, 2019) (raising possibility that an indictment was
defective under *Rehaif* because of the omission of a status-knowledge element, but declaring it
moot because the Government amended the indictment to include the knowledge requirement);
*United States v. Schafer*, No. 3:19-CR-47 DRL-MGG, 2019 WL 4393682, at *2 (N.D. Ind. Sept.
12, 2019) (finding an indictment sufficient under *Rehaif* because, as phrased in the relevant
indictment, the word "knowingly" could be construed to apply to both the possession and status
elements of § 922(g)).

*Rehaif* requires that the indictment under § 922(g) charge that the defendant *knew* his
status as a felon[6] when he possessed the firearm.  The Indictment here charging Defendant with
violating § 922(g) did not allege that he knew he was a felon.  (Indictment, *United States v.*

---

[6] In *Rehaif*, the issue related to the defendant's knowledge of his immigration status.

*Grayer*, 2:17-cr-20014-TLP, ECF No. 1 at PageID 2.)  Thus, the Indictment charging Defendant

with violating § 922(g) is defective for failing to allege an element of the offense.

But courts will not reverse a jury's verdict for a defect in the indictment if the defendant

challenges it after the verdict "unless the defendant can show prejudice" or "the indictment

cannot within good reason be construed to charge a crime."  *United States v. Gatewood*, 173 F.3d

983, 986 (6th Cir. 1999) (citing *United States v. Hart*, 640 F.2d 856, 857–58 (6th Cir. 1981) *cert.*

*denied*, 451 U.S. 992 (1981).[7]

First, Defendant here does not allege that the Indictment cannot be construed to charge a

crime.[8]

### B.    The Indictment's Failure to Allege the Knowledge Element Did Not Prejudice Defendant

And like the defendant in *United States v. Robinson*, Movant here has failed to show that

he suffered any prejudice as the result of omitting the "status-knowledge element" from his

Indictment because the evidence at trial supported a finding that he knew his status as a felon.

*See United States v. Robinson*, No. 2:17-cr-20046-SHM (W.D. Tenn. Nov. 13, 2019) (citing to

*Reed*, 2019 WL 5538742, at *3 (holding the indictment was insufficient under *Rehaif* but not

reversing because the evidence supported the finding that defendant knew of his status as a

---

[7] A defendant must show prejudice whether the indictment is challenged upon appeal or whether it is challenged in the interim after conviction but before sentencing.  *United States v. Bright*, 48 F.3d 1220 (6th Cir. 1995) (unpublished table opinion).

[8] Even if he did, that argument would be unavailing.  The Sixth Circuit has held that an indictment can reasonably be construed to charge a crime when it references the statute the defendant was found guilty of violating.  *See West*, 371 F. App'x at 630 (citing *Hart*, 640 F.2d at 858 ("By reference to the statute it is within reason to construe the indictment to charge a crime . . ."); *United States v. Martinez*, 981 F.2d 867, 871–72 (6th Cir. 1992) (holding an indictment sufficient because it cited the relevant statute, even where the scienter element was missing).  The Indictment here charged Movant with violating § 922(g).  This reference to the statute is considered enough to charge a crime, even where it fails to list all required elements.

felon)); *Hessiani*, 2019 WL 4751462, at *2 (same); *see also United States v. West*, 371 F. App'x
625, 630 (6th Cir. 2010) (holding that there was no prejudice when the evidence presented to the
jury at trial was enough to support the conviction); *Bright*, 48 F.3d at 1220 (same)).

In fact the Sixth Circuit considered this question on direct appeal and rejected Movant's
position.

> For the reasons explained by the district court and raised by the government on
> appeal, Defendant has not shown that his substantial rights were affected by his
> indictment's failure to include the knowledge-of-status element for his felon-in-
> possession charge. In this case, Defendant stipulated to his prior felonies at trial,
> which we have explained does not establish knowledge of status, but is strongly
> suggestive of it. *United States v. Raymore*, 965 F.3d 475, 486 (6th Cir. 2020). The
> Supreme Court recently explained that prior convictions in and of themselves are
> "substantial evidence" of knowledge of felon status. *Greer v. United States*, 593
> U.S. 503, 141 S. Ct. 2090, 2097–98, 210 L.Ed.2d 121 (2021). Moreover, at trial,
> Defendant was asked during cross-examination if he "knew [he] had been convicted
> of a felony as of October 3, 2016," which was the date of his arrest, to which
> Defendant responded, "Yes." (5-22-19 Jury Trial Tr., R. 259, Page ID #1968.) This
> case also has contemporaneous evidence of Defendant's knowledge of status—the
> record contains a signed statement by Defendant dated the day of his arrest, in
> which he told police that he had been convicted of robbery, drug crimes (which
> were specified in the statement to be a felony), and aggravated assault, and that he
> served eight-and-a-half years for the robberies, four years for the drugs, and six
> months for the assault. (Defendant Statement, R. 92-2, Page IDs ##149–50.)

*United States v. Grayer*, No. 20-5842, 2021 WL 3813198, at *4 (6th Cir. Aug. 26, 2021)

As the Sixth Circuit recognized, for many reasons, the evidence proved that Movant
knew of his status as a felon when he possessed a firearm and so he suffered no prejudice from
the insufficient Indictment.

First, Movant has 16 prior felony convictions, the existence of which "can . . . contribute
to the satisfaction of § 922(g)(1)'s status-knowledge element." *United States v. Robinson*, No.
2:17-cr-20046-SHM (W.D. Tenn. Nov. 13, 2019) (citing to *Rehaif*, 139 S. Ct. at 2209 (Alito, J.
dissenting) (noting that juries "will rarely doubt that a defendant convicted of a felony has

forgotten th[e] experience of imprisonment and other sentencing consequences").[9]  In *United States v. Spurlin*, the court noted that even if the defendant were to claim ignorance of his status as a felon, "the fact that [defendant] was an experienced drug dealer, and the fact that he was on federal supervised release at the time he committed the offenses at issue would make any claim that [defendant] did not know he was a convicted felon *incredible*."  No. 5:15-CR-1/MW/MJF, 2019 WL 4722467, at *6 n.5 (N.D. Fla. Aug. 16, 2019) (emphasis added).

Like the defendants in both *Robinson* and *Spurlin*, Movant's prior convictions show a long criminal history and extensive experience within the criminal justice system.  Given his 16 prior convictions, it would be incredible for a jury to find that he lacked knowledge of his status as a felon when he possessed the firearm.  *See Spurlin*, 2019 WL 4722467, at *6 n.5.

And Movant stipulated at trial that "as of the date of the charged conduct . . . [he] was a convicted felon as described in 18 U.S.C. § 922(g)(1)."  (*See United States v. Grayer*, 2:17-cr-20014-TLP, ECF No. 167, Trial Ex. 11.)  Such stipulations are binding, relieving the government of the burden to prove a defendant's status as a felon.  *See, e.g.*, *Benamor*, 2019 WL 4198358, at *5 (citing *Christian Legal Soc'y Chapter of Univ. of Cal. v. Martinez*, 561 U.S. 661, 677–78 (2010)); *see also Reed*, 2019 WL 5538742 at *3 (noting that the jury "could have inferred that [the defendant] knew he was a felon from his stipulation"); *United States v. Jackson*, No. 17-2727, 2019 WL 3916595, at *2 (7th Cir. Aug. 19, 2019), *reh'g denied* (Sept. 9, 2019) (holding, after *Rehaif*, that a stipulation to being a felon sufficiently satisfied the status requirement under § 922(g)(1)); *Denson*, 774 F. App'x at 185 (holding that the status-knowledge element was met

---

[9] *See also, e.g.*,  *Reed*, 2019 WL 5538741, at *3 (holding that the jury could infer that the defendant knew he was not supposed to have a gun, given his eight prior felony convictions); *United States v. Benamor*, No. 17-50308, 2019 WL 4198358, at *5 (9th Cir. 2019) (holding that the defendant's prior § 922(g) convictions proved beyond a reasonable doubt the knowledge required under *Rehaif*).

when the defendant stipulated to being convicted of a previous "felony offense"); *United States v. Anderson*, No. 2:10-CR-00113-LSC-JHE, 2019 WL 3806104, at *2 (N.D. Ala. Ju;y 26, 2019), *report and recommendation adopted*, No. 2:10-CR-00113-LSC-JHE, 2019 WL 3805998 (N.D. Ala. Aug. 13, 2019 (holding that the defendant's stipulation to prior felony convictions undermined his potential *Rehaif* argument).

By stipulating that he was a felon, Movant gained the benefit of preventing the Government from offering evidence of the number and the type of convictions he had. *See Old Chief v. United States*, 519 U.S. 172, 185, 191 (1997) (holding that the trial court abused its discretion under Federal Rule of Evidence 403 when it admitted the record of a defendant's prior convictions where a stipulated admission was available). Proving those convictions would help the Government show that Movant *knew* he was a felon. But *Old Chief* stipulations prevent prejudicial information about prior convictions to taint jury deliberations. *Id.* at 180–82. Movant cannot now benefit from the Government's failure to introduce evidence of his prior convictions—a circumstance he occasioned with his stipulation—and overturn his conviction for this lack of evidence.

Above all, Movant here admitted on cross-examination that he knew he was a felon when he possessed the firearm. In *Boose v. Marske*, the District Court for the Western District of Wisconsin found that the defendant's stipulation about his felon status coupled with his admission on direct examination that he had been convicted of several felonies "provide[d] more than enough evidence to support a reasonable jury verdict that [the defendant] knew he was a felon." *Boose v. Marske*, No. 17-cv-303-JDP, 2019 WL 4393077, at *3 (W.D. Wis. Sept. 13, 2019). Like the defendant in *Boose*, Movant here admitted on cross-examination that he knew he was a felony as of October 3, 2016. The trial transcript reads:

> Q.      Mr. Grayer, you are a convicted felon, right?
>
> A.      Yes, sir.
>
> Q.      And you knew you had been convicted of a felony as of October 3, 2016?
>
> A.      Yes, sir.

(Trial Transcript, *United States v. Grayer*, 2:17-cr-20014-TLP, ECF No. 198 at PageID 832.)

This admission—coupled with his many convictions and the stipulation to his felon status precluding the Government from introducing that evidence—is more than enough evidence supporting a reasonable jury verdict that Defendant knew he was a felon as of October 3, 2016.

Finally, in the jury instructions, the Court instructed the jury that it must find beyond a reasonable doubt that Defendant *knew he was a felon* when he possessed the firearm. The Court instructed:

> Count 3: Possession of a firearm by a convicted felon. Count 3 of the indictment charges the defendant with being a convicted felon in possession of a firearm.
>
> For you to find the defendant guilty of this crime, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:
>
> First, *as of October 3, 2016, the defendant knowingly had been convicted of a crime punishable by imprisonment for more than one year*. The government and the defendant have agreed by stipulation that, as of October 3, 2016, the defendant had been convicted of a crime punishable by imprisonment for more than one year.
>
> Second, that the defendant, following his conviction, knowingly possessed a firearm specified in the indictment.
>
> Third, that the specified firearm crossed a state line prior to the alleged possession. It is sufficient for this element to show that the firearm was manufactured in a state other than Tennessee. The government and the defendant have agreed by stipulation that the Tanfoglio 10mm caliber handgun specified in Count 3 was manufactured outside of the state of Tennessee.
>
> . . . .

Knowingly:  The term "knowingly" means voluntarily and intentionally, and not because of a mistake.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge.  If you have a reasonable doubt about any one of these elements, then you must find the defendant not guilty of this charge.

(Trial Transcript, *United States v. Grayer*, 2:17-cr-20014-TLP, ECF No. 199 at PageID 866–67.) (emphasis added).  The jury, therefore, had to find beyond a reasonable doubt that Movant knew he was a felon when he possessed the firearm to convict him under 18 U.S.C. § 922(g).

In short, the proof at trial was more than sufficient so that any rational trier of fact could have found Movant knew about his felon status based on: (1) Movant's stipulation to his felon status; (2) Movant's admission on the stand that he knew he was a felon as of October 3, 2016; and (3) his multiple prior convictions.[10]  Also the Court instructed the jury that it must find beyond a reasonable doubt that Movant knew he was a felon before it could convict him under § 922(g).  So this Court finds that Movant has shown no prejudice stemming from the defective Indictment and thus there is no reason to vacate the jury's verdict.  This claim is also **DENIED**.

## IV.    *Wooden* and *Erlinger* Claim

Movant argues that the recent Supreme Court decision in *Erlinger v. United States,* 144 S. Ct. 1840 (2024), justifies an early release.  He argues that *Erlinger* holds that a jury, not the court, should decide whether his qualifying convictions (of which there were at least 5) occurred on occasions different from one another.  Movant claims that this Court improperly decided that his five prior felony convictions occurred on occasions different from one another.

---

[10] Although the Government was prohibited from introducing specifics about his convictions in its case-in-chief, because Movant testified, Government counsel did cross-examine him about those convictions.  Movant admitted that he had several convictions.

And as a result, the Court should vacate his sentence and the finding that he is an armed career criminal. Movant overstates the effect of the *Erlinger* holding.

To begin, Movant has an extensive criminal record. (PSR, *United States v. Grayer*, 2:17-cr-20014-TLP, ECF No. 177 at PageID 738–52.) Under the Armed Career Criminal Act, one must have three qualifying convictions to be considered an armed career criminal. Depending how one counts the convictions, Movant has between five and sixteen qualifying convictions for violent or drug trafficking offenses. (*Id*.) For example, on December 4, 1998, Movant committed three armed robberies of individuals that were combined for a conviction. (*Id*. at PageID 742.) On December 17, 1998, Movant committed six aggravated robberies and a kidnapping, which were combined for a single conviction.[11] (*Id*. at PageID 743–44.)[12] On December 23, 1998, Movant committed an aggravated robbery of a pawn shop. (*Id.* at PageID 741.) Movant served his sentence until his release in May 2006. (*Id.*)

Movant did not stop committing crimes however. In 2009, Movant was convicted and sentenced for selling cocaine based on many sales in October and November 2007. (*Id*. at PageID 746.) He served a prison sentence until his release in March 2010. (*Id*.) After his release from prison, Movant was convicted again for selling cocaine for a transaction that occurred on October 28, 2010. (*Id*. at PageID 747.) Movant now claims that the Court erred when it determined that those prior convictions mandated that he be sentenced as an armed career criminal.

---

[11] The Court notes that some robbery victims on December 4 and December 17 overlapped. So perhaps those could be combined into a single conviction.
[12] The state court sentenced Movant on the same date for all the aggravated robbery convictions. Also the state court ordered that Movant serve the sentences concurrently.

The recent case of *United States v. Campbell* helps explain the issues here. *See* No. 22-5567, 2024 WL 4864338 (6th Cir. November 22, 2024). In *Campbell*, the defendant argued that his Tennessee robbery conviction did not qualify as a crime of violence. But the *Campbell* court quickly addressed that, pointing out that several cases had found that Tennessee robbery requires the use or threatened use of physical force. 2024 WL 4864338, at *3, citing *United States v. Mitchell*, 743 F.3d 1054, 1060–61 (6th Cir. 2014), *United States v. Belcher*, 40 F.4th 430, 431 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 606 (2023). The same holds true for aggravated robbery. *United States v. Lester*, 719 F. App'x. 455, 458 (6th Cir. 2017) ("Tennessee aggravated robbery is therefore a 'violent felony' under the use of force clause of the ACCA . . . ."). And so, Defendant's aggravated robbery convictions for his conduct in December 1998, qualify as violent felonies.

Movant argues here that it was improper for the Court to find that his violent crimes occurred on occasions different from one another, even though there were several days in between these robberies. The Court will address that question below. But even if all three of these convictions for violent offenses occurred on the same occasion, Movant has two other qualifying convictions for the sale of cocaine, one that occurred in 2007 and the other that occurred in 2011. Plus he served sentences in the state prison system between his convictions in 1999, 2009, and 2011. So the Court finds that no reasonable juror would find that Movant did not commit at least three of the crimes underlying his prior convictions on occasions different from one another.

Back to the *Campbell* case. When *Campbell* argued at sentencing that his prior convictions had not occurred on occasions different from one another, the law allowed the district court to decide that question. 2024 WL 4864338, at *5. But the Supreme Court has

recently said otherwise in the *Erlinger* case. *Id*. citing 144 S. Ct. at 1851-52. In *Erlinger*, the

Supreme Court equated the Armed Career Criminal Act[13] to the mandatory minimum sentences

in drug cases and it incorporated the rationale from its rulings in *Apprendi v. New Jersey* 530

U.S. 466 (200) and *Alleyne v. United States*, 570 U.S. 99 (2013) and ruled that because the

statutory sentencing range increases when one qualifies as an Armed Career Criminal, the jury,

not the Court, should make the determination about whether the defendant committed the prior

offenses on occasions different from one another. But the *Campbell* court said that even though

*Erlinger* settles the question about whether the district court made a constitutional error, it did

not settle the question about what remedy applies for such a constitutional error.

The *Campbell* court first found that a failure to submit a sentencing question to the jury is

not a "structural error" requiring an automatic reversal. *Citing Washington v. Recuenco*, 548

U.S. 212, 218, 222 (2006)("Failure to submit a sentencing factor to the jury, like failure to

submit an element to the jury, is not structural error."). The *Campbell* court noted that courts

address most constitutional errors under the harmless error analysis. 2024 WL 4864338, at *5.

Even errors related to *Apprendi* and *Alleyne* "are not exceptions to this general rule." *Id*. So the

*Campbell* court followed that rationale and turned to the question of whether the error was a

harmless one. *Id*. at *6.

To address the question of harmless error, the Court must decide whether it was harmless

beyond a reasonable doubt. *Campbell*, 2024 WL 4864338, at *8-9, citing *United States v.

Henderson*, 626 F.3d 326, 333 (6th Cir. 2010) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673,

681 (1986)). Even if this Court were to combine all Movant's conviction from his conduct in

---

[13] For those who qualify as ACC, their maximum potential sentence increases from 10 years to a mandatory minimum sentence of 15 years and maximum sentence of life imprisonment.

December 1998 into a single conviction, when we add the conviction for the sale of cocaine in
2007 and the sale of cocaine in 2011, he still has three prior qualifying convictions for ACCA
status. For that reason, the Court finds that the record here shows that any error here by this
Court in concluding that Movant qualified as an ACC is a harmless one beyond a reasonable
doubt. For that reason, Movant's claim that the Court violated the *Wooden* or *Erlinger* holdings
is **DENIED**.

## V.    Ineffective Assistance of Counsel

Movant argues that his lawyer was ineffective because he failed to assert the arguments
that he brings here. Because none of Movant's claims has merit, his lawyer's failure to assert
them is neither deficient service nor prejudicial to Movant. As a result, his claim of ineffective
assistance of counsel lacks merit and is **DENIED**.

## <u>APPEAL ISSUES</u>

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of
appealability should be granted. A certificate should issue if Petitioner has shown a "substantial
showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Having considered
Movant's claims here, the Court concludes that reasonable jurists could not find it debatable
whether Petitioner's application should be dismissed. And so this Court **DENIES** a certificate
of appealability because Movant fails to make the required showing of a "viable claim of the
denial of a constitutional right" or that the issues presented are "adequate to deserve
encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing
*Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App.
P. 22(b).

If Movant applies to appeal in forma pauperis, the Court **CERTIFIES**, under 28 U.S.C. § 1915(a)(3), that an appeal would not be taken in "good faith," and therefore **DENIES** leave to appeal in forma pauperis. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).[14]

## <u>CONCLUSION</u>

For the reasons above, the Court **DENIES** Defendant's § 2255 Motion.

**SO ORDERED**, this 28th day of April, 2025.

     s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

---

[14] If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or move to proceed in forma pauperis and supporting affidavit in the Sixth Circuit within 30 days (*see* Fed. R. App. P. 24(a) (4)–(5)).